USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __1/8/2020___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ERIN JONES,

                Plaintiff,

-against-

THE CITY OF NEW YORK,

                Defendant.

17 Civ. 4894 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, Erin Jones, proceeding *pro se*, alleges that Defendant, City of New York (the "City") violated her rights under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA"); the New York Human Rights Law, N.Y. Exec. L.§§ 296, *et seq.* ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101, *et seq.* ("NYCHRL") on account of her cardiac and respiratory disabilities. She alleges that the City denied her reasonable accommodations, fired her, and retaliated against her for requesting accommodations and for filing a discrimination charge with the United States Equal Employment Opportunity Commission ("EEOC"). Defendant now moves for summary judgment on all claims. ECF No. 120. For the reasons stated below, Defendant's motion is GRANTED in part and DENIED in part.

## BACKGROUND[1]

The facts discussed in this opinion are undisputed except where otherwise noted. The Court has drawn all reasonable inferences in favor of Plaintiff, as the nonmovant. *See Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).

---

[1] The following facts are drawn from the parties' pleadings and submissions, including the complaint, Defendant's Rule 56.1 statement of undisputed fact and Plaintiff's response, and the parties' declarations. Facts in dispute are so noted. Citations to a paragraph in Defendant's Rule 56.1 statement also include Plaintiff's response.

I.   September 2014 Request for Reasonable Accommodation

From 2008 to 2015, Plaintiff was employed at the New York City Police Department ("NYPD") as a secretary. 56.1 ¶ 1, ECF No. 130. She was assigned to the NYPD's Brooklyn Court Section. *Id.* ¶ 14. Plaintiff's duties included "performing moderately difficult secretarial, typing, related office and/or supervisor duties, with latitude for independent judgment, as well as general office work, scheduling appointments, and utilizing automated office systems." *Id.* ¶ 17 (internal quotation marks and citation omitted).

On September 26, 2014, Plaintiff requested an accommodation for her disability, a cardiac medical condition. *Id.* ¶ 25. Plaintiff sought an assignment to a command that would permit her to work "tours," or shifts, from either 8:00 a.m. to 4:00 p.m. or 9:00 a.m. to 5:00 p.m., as well as an exemption from working mandatory overtime weekend tours. *Id.* ¶ 40. Plaintiff resides in Ozone Park, Queens and used public transportation to commute to the Brooklyn Court Section, located in Brooklyn. *Id.* ¶¶ 32–33. At her deposition, Plaintiff testified that she considers an "evening shift" to be a tour starting after 6:00 p.m. and a "night shift" to be a tour starting after 9:00 p.m. *Id.* ¶¶ 29–30. Plaintiff does not recall ever working an evening tour, nor does she recall working a night tour, weekends, or an overtime tour. *Id.* ¶ 31.

Under NYPD policy, an employee is required to submit to medical evaluation by the NYPD's physician before being provided a reasonable accommodation. *Id.* ¶ 38. Employees must also provide additional medical documentation. By letter dated September 24, 2014, Plaintiff's personal physician, Lubov Sychikov, M.D., advised the NYPD that Plaintiff was on "two medications for her cardiac medical condition . . . is unable to travel long distances due to her medical conditions and is unable to work extended hours . . . can work up to 7-8 hours a day" and that her "medication will be monitored on the weekends." *Id.* ¶¶ 42–43; *see also* ECF 122-8

at 4. The Brooklyn Court Section required its staff to work weekends and mandatory overtime, as indicated on multiple forms signed by Plaintiff, dating back to September 2008. 56.1 ¶¶ 46–47; *see also* ECF No. 122-10. On October 6, 2014, Defendant denied Plaintiff's request for a reasonable accommodation as insufficiently supported and for failure to provide requested medical documentation. 56.1 ¶ 58.

Plaintiff did not appear for work on November 16 and 17, 2014, *id.* ¶ 61, and two Brooklyn Court Section Assistant Integrity Control Officers, Lieutenant Hans Lafontant and Sergeant Sylvia Smith, visited Plaintiff's residence on November 17, 2014 to investigate, *id.* ¶ 63. During the visit, Plaintiff claimed that she was on child care leave and that she had requested such leave in November 2014. *Id.* ¶ 63. Defendant claims that the Brooklyn Court Section's Commanding Officer, Captain William Tobin, confirmed with the NYPD's Military and Extended Leave Desk ("MELD")[2] that Plaintiff did not qualify for, and was not on, child care leave on November 16 and 17, 2014; Plaintiff states that she cannot substantiate this claim. *Id.* ¶ 64. Defendant claims that Lafontant contacted Plaintiff by telephone on November 21, 2014 and informed her that she would be suspended if she did not appear for her shift that day, scheduled to start at 3:00 p.m. *Id.* ¶ 67. Plaintiff acknowledges that she received this call but cannot confirm the date or time of the call. *Id.* Defendant claims that Plaintiff did not appear for work that day; Plaintiff does not recall whether this is the case. *Id.* ¶ 68. Plaintiff maintains that she submitted leave requests to the NYPD. *Id.* On November 20, 2014, the NPYD suspended Plaintiff for 30 days for "wrongfully engaging in conduct prejudicial to the good order, efficiency or disciple of the [d]epartment." *Id.* ¶ 69; *see also* ECF No. 122-19 at 1. After failing

---

[2] When on a leave of absence, employees are temporarily reassigned from their regular work locations to the NYPD's MELD. 56.1 ¶ 21. MELD is responsible for monitoring employees on leaves of absence and facilitating employees' return to duty when they return from leaves of absence. *Id.* ¶ 23.

3

to appear for her tour on December 23, 2014, the NYPD determined that Plaintiff was absent without leave ("AWOL") and suspended her again, for 30 days. *Id.* ¶¶ 72, 74–76.

On January 22, 2015, Plaintiff submitted a Hardship Leave of Absence application, which was granted, through March 31, 2015. *Id.* ¶ 78. This leave would allow Plaintiff to care for her child, who had a disability. *Id.* On July 16, 2015, Plaintiff requested a Sick Leave of Absence Without Pay ("SLWOP") from July 16 to October 1, 2015 due to exacerbation of her asthma. *Id.* ¶ 80. The NYPD approved Plaintiff's request and by letter dated July 28, 2015, advised Plaintiff that her leave of absence without pay would not extend beyond one year. *Id.* ¶¶ 83–84. Upon completion of her leave, Plaintiff was required to provide a doctor's note certifying her fitness to return to work. *Id.* ¶ 85. Before taking her leave, Plaintiff signed a form which noted that upon her return, she would be "assigned to a command according to the needs of the [d]epartment," which included working night tours, day tours, and weekends. *Id.* ¶ 86; *see also* ECF No. 122-21.

Plaintiff's leave of absence was extended through July 15, 2016. 56.1 ¶ 87. By letter dated July 20, 2016, MELD informed Plaintiff that if she was disabled, she was entitled to apply for a reasonable accommodation, and that if she was not physically and mentally fit to return to her position by August 9, 2016, she would be released from her position pursuant to § 73 of the New York State Civil Service Law ("Civil Service Law"). *Id.* ¶¶ 91–93. On August 23, 2016, Plaintiff appeared at the NYPD's Medical Division for a medical evaluation. *Id.* ¶ 95. NYPD's Deputy Chief Surgeon found Plaintiff medically able to perform the duties of secretary and fit for full and unrestricted duty. *Id.* ¶ 96.

II.   September 2016 Request for Reasonable Accommodation

On September 15, 2016, Plaintiff again requested an accommodation for her cardiac and respiratory disabilities. *Id.* ¶ 97. She sought the following accommodations: assignment to daytime tours and a new work location near her residence. *Id.* ¶ 98. Plaintiff testified that she requested a work location closer to home because it would lead to less asthma attacks, allow her to arrive to work on time, and improve her time and leave. *Id.* ¶ 100.

Along with her request, Plaintiff included a letter from her personal physician, Walter Yee, M.D., which stated that Dr. Yee reviewed Plaintiff's job functions and that she was capable of performing those duties. *Id.* ¶ 104. Dr. Yee's letter neither specified what medications Plaintiff was taking, nor stated that Plaintiff's medical conditions prevented her from traveling to her former Brooklyn Court Section work location or working overtime tours. *Id.* ¶ 105.

The City asserts that on December 23, 2016, the NYPD temporarily granted Plaintiff's request, transferring her to a command closer to her home and assigning her to a morning tour with no mandatory overtime, until January 31, 2017. *Id.* ¶ 113; *see also* ECF No. 122-27. Plaintiff asserts that she never received notice of this decision. 56.1 ¶ 113. On December 26, 2016, Plaintiff filed a charge of discrimination and retaliation with the EEOC. *Id.* ¶ 4.

By letter dated February 1, 2017, the NYPD's Office of the Deputy Commissioner of Equal Employment Opportunity ("DCEEO") advised Plaintiff that she had failed to provide documentation supporting her accommodation request, and that her "reasonable accommodation file" would be administratively closed if she failed to submit the required documents by February 15, 2017. *Id.* ¶ 116. That same day, MELD advised Plaintiff, by letter, that she had been absent from work and unable to perform the duties of her position for more than one year. *Id.* ¶ 117. Plaintiff was required to provide medical documentation by February 15, 2017, certifying her

5

physical and mental fitness to return to duty. *Id.* ¶ 118. The letter informed Plaintiff that if she was disabled, she was entitled to apply for a reasonable accommodation, and if Plaintiff failed to return to work by February 15, 2017, with or without an accommodation, her employment would be terminated pursuant to § 73 of the Civil Service Law. *Id.* ¶¶ 119–120.

On February 14, 2017, Plaintiff submitted to the DCEEO a letter from Dr. Yee, stating that Plaintiff could not travel long distances, work more than seven to eight hours per day, and was medically fit to fulfill her duties as secretary. *Id.* ¶¶ 122–123. On March 16, 2017, the DCEEO advised Plaintiff that it closed her reasonable accommodation case stating that Plaintiff had failed to provide the NYPD with the required medical documentation. *Id.* ¶ 124.

III. Termination of Employment

By letter dated May 3, 2017, the NYPD fired Plaintiff pursuant to § 73 of the Civil Service Law, due to her failure to resume her duties as a secretary for more than one year. *Id.* ¶ 127. The letter stated that she could request reinstatement to her former position within one year of the end of her disability by submitting a written application to the City's Department of Citywide Administrative Services ("DCAS") for an examination to determine her physical and mental fitness to return to duty. *Id.* ¶ 128. The letter further informed Plaintiff that she would be reinstated to her former position if a vacancy existed, and if no vacancy existed, Plaintiff would be placed on a preferred list for a period of four years for reinstatement to her former civil service title or a similar position. *Id.* ¶ 129

Plaintiff initiated this action on June 28, 2017. Compl., ECF No. 1. Plaintiff filed a second charge of discrimination and retaliation with the EEOC in early February 2018. 56.1 ¶ 7.

# DISCUSSION

## I. Legal Standard

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26 (1986). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

"The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party." *Connecticut Ironworkers Employers Ass'n, Inc. v. New England Reg'l Council of Carpenters*, 869 F.3d 92, 98–99 (2d Cir. 2017); *see also* Fed. R. Civ. P. 56(c)(1). If the nonmoving party has the ultimate burden of proof on specific issues at trial, the movant may also satisfy its own summary-judgment burden by demonstrating that the adverse party cannot produce admissible evidence to support an issue of fact. *Celotex*, 477 U.S. at 322–23; *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine dispute of material fact. *Beard v. Banks*, 548 U.S. 521, 529 (2006); *PepsiCo*, 315 F.3d at 105.

"Even though a *pro se* plaintiff is generally afforded more liberty in [her] pleadings, [s]he must still come forward with evidence of specific facts that refutes the defendant's evidence in its motion for summary judgment." *Spavone v. City of New York*, 420 F. Supp. 2d 236, 238 (S.D.N.Y. 2005).

II. Analysis

The complaint states four causes of action: (1) failure to provide a reasonable accommodation in violation of the ADA, (2) retaliation in violation of the ADA, (3) disability discrimination under the NYSHRL and NYCHRL, and (4) retaliation under NYSHRL and NYCHRL. Compl. ¶¶ 59–98. Viewing the record in the light most favorable to Plaintiff, *see Connecticut Ironworkers*, 869 F.3d at 98–99, Defendant's motion for summary judgment is GRANTED as to all claims except failure to provide a reasonable accommodation in violation of the ADA.

A. Failure to Provide Reasonable Accommodations under the ADA

i. Timeliness of Claims

Defendant moves for summary judgment on Plaintiff's ADA claims on the grounds that they (1) are time barred and (2) fail to establish a prima facie case of disability discrimination. Def. Mem. at 3, 7, ECF No. 123. A plaintiff seeking to assert an ADA discrimination claim must first file an administrative charge with the EEOC or an equivalent agency "within three hundred days after the alleged unlawful employment practice." 42 U.S.C. § 2000e-5. "Failure to do so renders the claim time-barred." *Forman v. City of New York*, No. 14 Civ. 6282, 2017 WL 1167334, at *3 (S.D.N.Y. Mar. 27, 2017); *see also Hoffman v. Williamsville School Dist.*, 443 Fed. App'x. 647, 649–50 (2d Cir. 2011) (affirming a decision to dismiss an ADA claim for failure to accommodate because it was filed more than 300 days after the accommodation was denied). Plaintiff filed her first charge of discrimination with the EEOC on December 26, 2016, 56.1 ¶ 4, based on her first request for a reasonable accommodation, filed on September 26, 2014, *id.* ¶ 25, and denied on October 6, 2014, *id.* ¶ 58. March 1, 2016 is 300 days before December 26, 2016. *Id.* ¶ 5. Plaintiff's claims with respect to actions taken by Defendant prior

to March 1, 2016, such as the denial of her 2014 request for a reasonable accommodation, *id.* ¶ 58, and her suspensions in late 2014, *id.* ¶¶ 74–76, are, therefore, time-barred. Accordingly, Defendant's motion for summary judgment must be granted as to those claims.

The continuing violations doctrine does not save Plaintiff's untimely claims. Although Plaintiff does not raise the argument in her responsive brief, the Court will consider such a theory "out of solicitude for [Jones] as a *pro se* Plaintiff." *Williams v. Savory*, 87 F. Supp. 3d 437, 454 (S.D.N.Y. 2015). Under this doctrine, "if a plaintiff has experienced a continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Hudson v. W. New York Bics Div.*, 73 F. App'x 525, 528 (2d Cir. 2003) (internal quotation marks and citation omitted). "To trigger the continuing violation doctrine when challenging discrimination, the plaintiff must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy." *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (internal quotation marks and citation omitted). Allegations of "separate instances of alleged unlawful conduct, occurring at different times and under different circumstances, without a non-conclusory factual connection—rather than a common policy under which all the actions were carried out" are insufficient to invoke the continuing-violation doctrine. *Jackson v. New York*, 523 F. App'x 67, 69 (2d Cir. 2013).

Although Plaintiff's September 2016 request for a reasonable accommodation is timely, Plaintiff's September 2014 request occurred at a "different time[]" and under "different circumstances," with no "common policy" linking the two. *See Jackson*, 523 F. App'x at 69. Each request involved discrete reviews by the NYPD; the 2016 request came after a yearlong

9

leave of absence by Plaintiff, and, it appears that the 2016 request may have been granted by Defendant, even though Plaintiff disputes ever receiving notice of such an approval.

Accordingly, Plaintiff's claims that Defendant's actions taking place prior to March 1, 2016 violated the ADA are time-barred and Defendant's motion for summary judgement is GRANTED as to those claims.

ii. 2016 Request for Reasonable Accommodation

The ADA requires an employer to afford an employee a reasonable accommodation for a known disability unless doing so would impose an undue hardship on the employer. *See* 42 U.S.C. § 12112(b)(5)(A). "Discrimination in violation of the ADA includes, *inter alia*, 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'" *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009) (quoting 42 U.S.C. § 12112(b)(5)(A)). A qualified individual is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8)).

To establish a prima facie claim for failure to accommodate, Plaintiff must demonstrate that:

> (1) Plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

*McBride*, 583 F.3d at 97 (internal quotation marks, alteration, and citation omitted). "In the context of the ADA, reasonable accommodation may include, modification of job duties and schedules, alteration of the facilities in which a job is performed, acquisition of devices to assist the performance of job duties, and, under certain circumstances, 'reassignment to a vacant position.'" *Id.* (quoting 42 U.S.C. § 12111(9)(B)). "The plaintiff bears the burdens of both

production and persuasion as to the existence of some accommodation that would allow her to perform the essential functions of her employment, including the existence of a vacant position for which she is qualified." *Id.* at 97.

A genuine dispute of material fact exists as to whether Defendant violated the ADA by failing to provide Plaintiff a reasonable accommodation. Plaintiff's duties consist of secretarial tasks such as typing, and general office work such as scheduling appointments. *See* 56.1 ¶ 17. Plaintiff's 2016 accommodation request sought an assignment to daytime tours and a work location near her residence, because of her cardiac and respiratory disabilities. *Id.* ¶¶ 97–98. The Brooklyn Court Section required its staff to work weekends and mandatory overtime. *Id.* ¶¶ 46–47. Plaintiff testified, however, that between 2007 and 2015, she never worked a night tour, and does not recall if she actually ever worked an evening tour, weekends, or an overtime tour that she would consider a night or evening shift. *Id.* ¶ 31. Plaintiff's request, therefore, appears reasonable and within the realm of accommodations that Defendant can provide.

Defendant notes that Plaintiff was disciplined and suspended on numerous occasions for failing to appear for work and posits this as evidence that Plaintiff could not perform the essential duties of her job, with or without accommodations. Def. Mem. at 7. This is disputed however, by Plaintiff's personal physician, who after reviewing Plaintiff's job requirements concluded that Plaintiff was capable of performing those duties. 56.1 ¶ 104. Defendant's assertion is also disputed by the NYPD's Deputy Chief Surgeon finding that Plaintiff was medically able to perform the duties of secretary and fit for full and unrestricted duty. *Id.* ¶ 96.

Defendant's assertion is further undermined, and the merits of Plaintiff's request are further supported, by the fact that Defendant claims that it granted Plaintiff temporary leave on December 23, 2016, transferring her to a command closer to home and assigning her to a

morning tour with no mandatory overtime. *Id.* ¶ 113. Defendant's decision to grant a temporary accommodation suggests that Defendant believed that Plaintiff qualified for a reasonable accommodation and was capable of performing her essential functions, at least with an accommodation. Although Plaintiff's respiratory condition made getting to work challenging, Defendant has not proven that Plaintiff was incapable of performing her duties once at work. A dispute of material fact, therefore, exists as to whether Plaintiff "could perform the essential functions of the job at issue." *McBride*, 583 F.3d at 97.

Defendant further argues that it is entitled to summary judgment because it has "already provided a 'plainly reasonable' accommodation." Def. Mem. at 8 (quoting *Noll v. IBM*, 787 F.3d 89, 94 (2d Cir. 2015)). Here too, however, there exists a genuine dispute as to a material fact. Although the record demonstrates that, at least internally, a temporary accommodation was granted, Plaintiff disputes ever being informed of such a decision. 56.1 ¶ 113; *see also* ECF No. 122-27 (internal memo documenting approval but failing to attach the copy of the letter to be sent to Plaintiff); Jones Dep. Tr 159:8-12, ECF No. 122-3 ("Q: What did you think when you saw this letter? A: I was shocked. Q: Why were you shocked? A: Because I had never been informed that my application for reasonable accommodation had been approved.").

Accordingly, Defendant's motion for summary judgment with respect to Plaintiff's claim that Defendant failed to provide her with a reasonable accommodation in 2016 is DENIED.

    B. Disability Discrimination under NYSHRL and NYCHRL

Plaintiff contends that Defendant engaged in a course of conduct that "included wrongfully discharging and/or refusing to reinstate [her] employment because of her disability or perceived disability" in violation of the NYSHRL and NYCHRL. Compl. ¶ 81. Defendant argues that summary judgment is appropriate because Plaintiff "fails to establish a prima facie

case" and "the record contains a host of documents reflecting [D]efendant's legitimate non-discriminatory business reasons for its actions." Def. Mem. at 7.

"In discrimination claims brought under the New York State and New York City Human Rights Laws, the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973) applies." *Ferraro v. Kellwood Co.*, 440 F.3d 96, 99 (2d Cir. 2006).

> "That framework requires a plaintiff in a disability-discrimination case to establish a prima facie case of discrimination, after which the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action in question. Once the defendant provides such a reason, the plaintiff shoulders the burden of showing 'sufficient potential proof for a reasonable jury to find the proffered legitimate reason merely a pretext' for discrimination."

*Id.* at 100 (citation omitted).

To establish a prima facie case, Plaintiff must demonstrate that: (1) her employer is subject to the ADA; (2) she is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability. *Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015).

The parties do not dispute that the City is subject to the ADA, NYSHRL, and NYCHRL. Nor do the parties dispute that Plaintiff is disabled, under the ADA, or the broader definitions of disability found in the NYSHRL or NYCHRL. *See Giordano v. City of New York*, 274 F.3d 740, 753 (2d Cir. 2001). The parties do disagree, however, as to whether the remaining elements have been met. Considering the evidence that both Plaintiff's personal physician and the NYPD's Deputy Chief Surgeon found that Plaintiff was able to perform her secretarial duties, 56.1 ¶¶ 96, 104, the Court finds that Plaintiff has carried her minimal burden of demonstrating that she was

13

qualified to perform the essential functions of the job. *See Velez v. SES Operating Corp.*, No. 07 Civ. 10946, 2009 WL 3817461, at *9 (S.D.N.Y. Nov. 12, 2009). Plaintiff has also demonstrated that she has suffered an adverse employment action. "An adverse employment action must be more disruptive than a mere inconvenience or an alteration of job responsibilities and might be indicated by a termination of employment." *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71 (2d Cir. 2019) (internal quotation marks and citation omitted). Defendant firing Plaintiff on May 3, 2017, 56.1 ¶ 127, establishes that she suffered an adverse employment action.

Although the Court finds that Plaintiff has satisfied the first four elements of the prima facie case, "there is insufficient evidence in the record to permit a reasonable factfinder to find that [Plaintiff] carried [her] burden as to the final factor—that any adverse employment action occurred because of disability." *Hatch v. Brennan*, No. 18-2387, 2019 WL 6245755, at *2 (2d Cir. Nov. 22, 2019). Even assuming Plaintiff had established a prima facie case, Defendant has "put forward a legitimate nondiscriminatory reason for Plaintiff's termination." *Sanders v. New York City Dep't of Hous. Pres. & Dev.*, No. 09 Civ. 4054, 2010 WL 3025651, at *9 (S.D.N.Y. July 28, 2010), *aff'd*, 470 F. App'x 1 (2d Cir. 2012).

The NYPD terminated Plaintiff's employment pursuant to § 73 of the Civil Service Law, due to her failure to resume her duties as a secretary for more than one year. 56.1 ¶ 127. *See* N.Y. Civ. Serv. Law § 73 ("When an employee has been continuously absent from and unable to perform the duties of [her] position for one year or more by reason of a disability . . . [her] employment status may be terminated and [her] position may be filled by a permanent appointment.") Plaintiff was granted a one-year leave of absence through July 15, 2016. 56.1 ¶ 87. However, Plaintiff did not return to work on July 16, 2016, *id.* ¶ 90, and although the record demonstrates that the parties were in communication after July 16, 2016 with respect to a

reasonable accommodation, *see id*. ¶¶ 97–114, it does not appear that Plaintiff returned to work any time after her leave concluded. Given that Plaintiff was out on leave for one year and that Defendant fired her in accordance with Civil Service Law § 73, Defendant has presented a non-discriminatory reason for firing Plaintiff. *See Bresloff-Hernandez v. Horn*, No. 05 Civ. 0384, 2007 WL 2789500, at *6 (S.D.N.Y. Sept. 25, 2007) ("No presumption of discrimination arises when an employer makes a decision explicitly provided for by the Civil Service Law.").

Accordingly, Defendant's motion for summary judgment as to Defendant's alleged disability discrimination under the NYSHRL and NYCHRL is GRANTED.

### C. Retaliation

Last, Plaintiff alleges that she engaged in protected activity, including requesting an accommodation and filing a complaint with the EEOC, and that Defendant retaliated against Plaintiff for engaging in these protected activities by denying her reasonable accommodations, failing to reinstate her, and firing her. Compl. ¶¶ 67–77, 91–98. Plaintiff brings these claims under the ADA, NYSHRL and NYCHRL. *Id.* Defendant argues that there is no evidence in the record supporting the claim that Defendant retaliated against Plaintiff and that the record establishes that there were legitimate bases for the actions taken by Defendant. Def. Mem. at 11, 14.

"The ADA makes it unlawful for an employer to 'discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.'" *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (quoting 42 U.S.C. § 12203(a)). The NYSHRL and NYCHRL contain similar provisions against retaliation and are governed by the same standards of the ADA. *Id.*;

15

*see also Pearson v. Unification Theological Seminary*, 785 F. Supp. 2d 141, 157 (S.D.N.Y. 2011) ("Retaliation claims under the NYSHRL and NYCHRL are analyzed as though they are claims under federal law, with the exception that under the NYCHRL any retaliation, material or not, suffices for plaintiff to establish a retaliation claim."). Filing a complaint with the EEOC is a protected activity, *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001), as is seeking a good faith request for an accommodation, *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 149 (2d Cir. 2002).

> In order to defeat a motion for summary judgment addressed to a claim of retaliation . . . , the plaintiff must first present sufficient evidence to make out a prima facie case, that is, evidence sufficient to permit a rational trier of fact to find (1) that she engaged in protected participation or opposition under [the ADA], (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action.

*Lovejoy-Wilson*, 263 F.3d at 223 (citation omitted). Causal connection may be established "either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).

Plaintiff has clearly established the first three elements of a prima facie retaliation claim. Plaintiff engaged in protective activity by filing a complaint with the EEOC, 56.1 ¶ 4, and requesting a reasonable accommodation, *id.* ¶¶ 25, 97. Defendant does not dispute being aware of the EEOC complaint and certainly was aware of the accommodation request because Plaintiff made this request of Defendant. Plaintiff also suffered an adverse employment action because she was denied a reasonable accommodation and was later fired. *Id.* ¶¶ 58, 127.

Based on the record, however, Plaintiff has not established that "a retaliatory motive played a part" in either the termination of her employment or the denial of a reasonable accommodation. *Lovejoy-Wilson*, 263 F.3d at 223 (citation omitted). With respect to the termination of her employment, Plaintiff argues that she was fired shortly after filing a complaint of discrimination with the EEOC. Pl. Mem. at 19, ECF No. 129. Proximity in time, however, is generally insufficient to establish retaliatory motive, especially when the gap is greater than three months. *See, e.g.*, *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (noting that time periods greater than three months are insufficient to establish causal relationship) (citation omitted); *Hollander v. Am. Cyanamid Co.,* 895 F.2d 80, 85–86 (2d Cir. 1990) (gap of approximately three months between agency complaint and retaliatory action insufficient to prove causal nexus in age discrimination case).

Here, Plaintiff filed her complaint with the EEOC on December 26, 2016, 56.1 ¶ 4, and was fired five months later on May 3, 2017, *id.* ¶ 127. Additionally, Plaintiff's employment was terminated pursuant to Civil Service Law § 73, which, in the absence of any other evidence indicating retaliatory motive, further limits any inference of potential retaliatory motive for Plaintiff's firing.

The record also does not support a finding that retaliatory motive played a part in the denial of Plaintiff's reasonable accommodation requests. The record makes clear that Defendant apprised Plaintiff, on multiple occasions, that she was entitled to apply for a reasonable accommodation. 56.1 ¶¶ 92, 119. The record also establishes that Defendant granted Plaintiff a temporary reasonable accommodation, assigning her to a command closer to home and a morning tour with no mandatory overtime, until January 31, 2017. *Id.* ¶ 113 Although there is a genuine dispute as to whether Plaintiff was informed of this accommodation, *id.*, the record does

not justify an inference that any miscommunication of that decision was due to retaliatory animus.

The time between the protected activities and the alleged acts of retaliation is also insufficient to prove causation with respect to the denial of Plaintiff's 2016 reasonable accommodation request. The two relevant protected activities are the request for an accommodation, made on September 15, 2016, *id.* ¶ 97, and the filing of a complaint with the EEOC, made on December 26, 2019, *id.* ¶ 4. On December 23, 2016, three months after the request was made, and days before the EEOC complaint was filed, the NYPD temporarily granted Plaintiff's reasonable accommodation request. *Id.* ¶ 113. On February 1, 2017, four months after the request and a month and a half after the EEOC complaint was filed, the NYPD's DCEEO advised Plaintiff by letter that she had failed to provide documentation supporting her request, and that her reasonable accommodation file would be administratively closed if she failed to submit the required documents by February 15, 2017. *Id.* ¶ 116. It was not until March 16, 2017, six months after the initial request was made, and three months after the EEOC complaint was filed, that DCEEO informed Plaintiff that it closed Plaintiff's reasonable accommodation case because Plaintiff failed to provide the NYPD with the required medical documentation. *Id.* ¶ 124.

In the time between Plaintiff's initial request for leave and Defendant's March 16 denial, Plaintiff and Defendant were in constant communication regarding the necessary documentation to resolve Plaintiff's request. Although the record also demonstrates some miscommunication between the parties throughout the process, the record does not evidence any retaliatory animus on the part of Defendants in attempting to resolve Plaintiff's request for a reasonable accommodation. *See Lovejoy-Wilson*, 263 F.3d at 223.

Accordingly, Defendant's motion for summary judgment on Plaintiff's retaliation claims under the ADA, NYSHRL, and NYCHRL is GRANTED.

## CONCLUSION

For the reasons stated above:

- Defendant's motion for summary judgment on Plaintiff's reasonable accommodation claim is DENIED, except for those claims accruing prior to March 1, 2016, which are DISMISSED as time-barred.

- Defendant's motion for summary judgment on Plaintiff's disability discrimination claim is GRANTED.

- Defendant's motion for summary judgment on Plaintiff's retaliation claim is GRANTED.

Trial will commence on **June 22, 2020**, at **9:00 a.m.**

Plaintiff shall file her pretrial statement within **30 days** of receiving a copy of this Order, in accordance with Rule V.A. of the Court's Individual Practices in *Pro Se* Cases. The Clerk of Court is directed to terminate the motion at ECF No. 120 and mail a copy of this Order to Plaintiff *pro se*.

SO ORDERED.

Dated: January 8, 2020
      New York, New York

_____
ANALISA TORRES
United States District Judge